## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.: 1:19-cr-00087 (TNM)** |
| | : | |
| **CHUNYAN WANG,** | : | |
| **Defendant** | : | |
| | : | |

### MOTION IN LIMINE TO LIMIT TESTIMONY AND EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully moves in limine to limit the scope of evidence and testimony regarding (1) the specific grievances giving rise to the defendant's motivation and reason for seeking asylum and engaging in protest activities against representatives of the People's Republic of China ("PRC"), and (2) the specific details of what the defendant hoped to convey to the Protectee if her actions were successful.   As grounds for this motion, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing on this motion.

### I.    BACKGROUND

On March 3, 2019, the defendant was charged with two counts each of violating 18 U.S.C. § 112(b)(1) and (2), Obstructing a Foreign Official, and 18 U.S.C. § 118, Interference with Protective Functions.   These charges stemmed from the following two incidents.

#### *January 30, 2019 Incident*

On January 30, 2019, a delegation from the Government of the PRC, including Vice Premier Liu He (hereinafter, "the Protectee"), was present in the District of Columbia on an official visit.   During this official visit, Diplomatic Security Service ("DSS") special agents

were providing protection to the Protectee and the delegation, pursuant to the agents' authority under section 103 of the Diplomatic Security Act (18 U.S.C. § 4802).

The Protectee and his delegation resided at the Willard Hotel on Pennsylvania Avenue, NW, which has a pedestrian entrance / exit on Pennsylvania Avenue.   At approximately 8:34 a.m., the Protectee, escorted by DSS agents, walked out of the Pennsylvania Avenue exit of the Willard Hotel and began walking toward the designated transport vehicle.   The Protectee was scheduled to travel in the vehicle to a meeting at the Office of the U.S. Trade Representative, which is located a few blocks away, on 17th Street, NW.

As the Protectee made his way toward the vehicle, a group of individuals on the sidewalk, including the defendant, rushed toward the Protectee, who was surrounded by Special Agents.   One Special Agent moved between the defendant and the Protectee, attempting to block the defendant, who was reaching toward the Protectee with her hands around the Special Agent and pushing her body against the Special Agent.   As the Special Agent attempted to shield the defendant from making contact with the Protectee, the defendant fell to the ground, shortly before the Protectee was escorted into the vehicle.   Based on the defendant's actions, multiple DSS agents had to depart their assigned sector responsibilities to intercept the defendant and prevent her from reaching the Protectee.   These events were captured on video that was published on YouTube.   The defendant was not arrested at the time of this incident.

## *February 22, 2019 Incident*

On February 22, 2019, the Protectee was again in the District of Columbia on an official visit to meet with U.S. Government officials, including the President of the United States. During this visit, the Protectee and his delegation were again residing at the Willard Hotel.   In addition to the pedestrian entrance / exit on Pennsylvania Avenue, NW, and another on F Street,

NW, the Willard Hotel has an underground parking garage with a single entrance/exit ramp located on F Street, NW, close to mid-block between 14th and 15th Streets, NW.

During previous Chinese government delegation visits to the United States, including the visit on January 30, 2019, discussed above, DSS had observed protests and harassment directed at these delegations, including instances in which persons had attempted to run in front of motorcade vehicles or approach a DSS protectee on foot.   Accordingly, on February 22, 2019, DSS arranged to use the Willard Hotel's underground garage for motorcade movements to and from the hotel, because that entrance/exit provided increased security.

Approximately fifteen minutes before the motorcade's departure from the underground garage, a DSS Special Agent made contact with the defendant, who was at that time standing on the south side of F St. NW, immediately to the west of the Willard parking garage entrance. The defendant was standing next to two other females, both of whom had press/media identification.   The DSS Special Agent asked the defendant for media / press identification as she was standing with the media members.   In response, the defendant said in broken English that she did not speak English.   The DSS Special Agent called over a nearby member of the Chinese delegation, who began speaking to the defendant in her language, but the defendant did not respond.   Through the delegation member, the defendant was asked for identification, but stated that she did not have any.   The two media personnel informed the DSS Special Agent that the defendant was not part of their media teams and was not known to them.   Through the delegation member, the DSS Special Agent advised the defendant that she needed to leave the area of the garage if she did not have identification.   The defendant then left, walking away westbound on F Street, NW toward 15th Street, NW.

At approximately 8:50 a.m., the DSS motorcade containing the Protectee (and other

Chinese diplomats who were members of the Protectee's delegation) exited the Willard Hotel's underground garage, proceeding up the garage entrance/exit ramp.   DSS personnel were present on foot at the top of the ramp, and on the sidewalk on each side of the garage entrance/exit, DSS personnel had placed bicycle rack-style crowd barriers that were marked with a plastic placard containing the words POLICE LINE.

As the DSS motorcade departed the garage, passed the crowd barriers, and turned eastbound on F Street, NW, toward 14th Street, NW, the defendant ran from the sidewalk on the opposite side of the street from the Willard Hotel garage entrance / exit, directly toward a moving DSS limousine as it was slowly turning onto F Street, NW, after exiting the garage. The defendant waved her arms as she approached the DSS limousine, and came within five feet of the DSS limousine.   A DSS Special Agent in the limousine activated the vehicle's air horn due to the defendant approaching the limousine.

A DSS Special Agent working the protective detail saw the defendant begin to run toward the DSS limousine.   That DSS Special Agent left his position to intercept the defendant as she ran toward the limousine and prevent her from reaching the limousine, which interrupted his assigned role in the protection detail.   In order to mitigate the threat presented by the defendant, the intercepting DSS Special Agent pushed the defendant against a parked van on the north side of F St., NW and kept his body between the defendant and the motorcade until the motorcade crossed out of the DSS Special Agent's sector.   The DSS Special Agent then directed the defendant to depart the area westbound toward 15th Street, NW.

Video of the incident was later published on YouTube, with commentary provided by the defendant and two other individuals.   During the defendant's commentary, the defendant explains exactly what she did during the incident and how the DSS personnel on scene

responded.   The defendant also provides extensive details about the substance of the matters she wished to raise with the Protectee and the alleged conduct of the Chinese government that led her to come to the United States and engage in her protest activities, including those activities for which she is now facing charges.

## II.    ARGUMENT

The specific grievances giving rise to the defendant's motivation and reason for seeking asylum and engaging in protest activities against representatives of the PRC, as well as the specific details of what she hoped to convey to the Protectee if her actions were successful, are irrelevant to both of the offenses charged and should therefore be excluded.   Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); Huddleston v. United States, 485 U.S. 681, 687-688 (1988).   Evidence is only relevant if it has a tendency to make a fact of consequence more or less probable than without the evidence.   Fed. R. Evid. 401.

To carry its burden on the 18 U.S.C. § 118 charges, the Government must establish that the defendant obstructed, resisted, or interfered with a Federal law enforcement agent engaged in authorized protective functions and that the defendant knowingly and willfully took the actions that resulted in the obstruction, resistance, or interference.   18 U.S.C. § 118.   That is, the only element the Government must prove related to the defendant's state of mind is that she intended to run or push towards the Protectee during each incident.   The defendant's grievances against the Government of the PRC, her past history at its hands, or the alleged actions of the PRC more generally, simply have no bearing whatsoever on this point.   The substance of what she hoped to convey to the Protectee if she successfully reached him is likewise inconsequential on this point. As a result, any such testimony or evidence is irrelevant and therefore not admissible.

As to the 18 U.S.C. § 112 charges, the Government must prove that the defendant did or

attempted to, intimidate, coerce, threaten, or harass the Protectee, or obstruct the Protectee in the performance of his official duties.    With regard to the obstruction prong of the statute, the defendant's reason for engaging in the charged behavior has no bearing on any material fact, and is therefore irrelevant; all that matters is whether her actions – whatever their motivations – attempted to or actually did obstruct the Protectee's performance of his official functions.    To the extent the defendant's motivations may be at all relevant to the "intimidate, coerce, threaten, or harass" prong, they are only relevant, and therefore admissible, insofar as they establish that she had a different purpose in acting as she did.    Thus, while the fact that she has grievances against the Government of the PRC – a fact which the Government does not contest – may be material, the specific reasons why she has those grievances and what she sought to have the Protectee do about them are not.    That is, those details do not make the existence of her uncontested grievances any more or less probable.    Pursuant to Rule 401 of the Federal Rules of Evidence, the defendant should therefore be precluded from eliciting testimony or introducing evidence in any other form that details her reason for seeking asylum, the Government of the PRC's alleged treatment of her or others, as well as the specifics and merits of what she hoped to convey to the Protectee.

Should the Court find such details and specifics relevant, the Court should nonetheless exclude such testimony and evidence pursuant to Rule 403, as its probative value is substantially outweighed by its prejudicial effect.    This case is not about the alleged bad behavior of the PRC, but rather about the inappropriate and illegal methods that the defendant utilized to express her displeasure to the PRC and the effects of her actions on that PRC's official and on the actions of law enforcement.    Whatever incremental benefit such testimony and evidence may provide the defendant, such benefit is substantially outweighed by the prejudicial effect the defendant's litany

of grievances would have on the jury.   Unfair prejudice within the context of Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."   United States v. Doe, 903 F.2d 16, 21 (D.C. Cir. 1990) (citing Rule 403 Advisory Committee Notes).

In the video posted online, the defendant provides a detailed recitation of exactly what the Government of the PRC allegedly did to her, her family, and others and explains how it has motivated her to take various actions, including the protest actions at issue.   Were testimony and evidence along the lines of that recitation permitted during trial, the jury could easily be overwhelmed by emotions concerning the PRC's alleged actions.   Consequently, such testimony and evidence should be excluded pursuant to Federal Rule of Evidence 403.

WHEREFORE, the Government respectfully requests that this Court grant its motion to limit the scope of evidence and testimony regarding the specific grievances giving rise to the defendant's motivation and reason for engaging in protest activities against representatives of the PRC, as well as the specific details of what she hoped to convey to the Protectee if her actions were successful.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar Number 472-845

By: _____/s/_____
REAGAN N. CLYNE
Virginia Bar No. 74767
Special Assistant U.S. Attorney
National Security Section
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
Reagan.Clyne@usdoj.gov
(202) 252-7215